1  Daniel D. Rubinstein (SBN: 178896)
   drubinstein@winston.com
2  William C. O'Neil (Admitted *Pro Hac Vice*)
   woneil@winston.com
3  **WINSTON & STRAWN LLP**
   35 West Wacker Drive
4  Chicago, IL 60601-9703
   Telephone: (312) 558-5600
5  Facsimile: (312) 558-5700

6  Erin R. Ranahan (SBN: 235286)
   eranahan@winston.com
7  **WINSTON & STRAWN LLP**
   333 South Grand Avenue
8  Los Angeles, CA 90071-1543
   Telephone: (213) 615-1700
9  Facsimile:  (213) 615-1750

10 Attorneys for Defendant
   FTI Consulting, Inc.

11

12           **UNITED STATES DISTRICT COURT**

13          **CENTRAL DISTRICT OF CALIFORNIA**

14

15

16 OAKTREE PRINCIPAL FUND V,        Case No. 2:15-cv-08574-PSG-MRW
   L.P. et al.,
17                                   **DISCOVERY MATTER**
            Plaintiffs,
18                                   **DEFENDANT FTI CONSULTING,
        v.                           INC.'S NOTICE OF MOTION AND
19                                   MOTION TO COMPEL
   WARBURG PINCUS LLC et al.,        PRODUCTION OF DOCUMENTS
20                                   FROM PLAINTIFFS & NON-
            Defendants.             PARTY HOULIHAN LOKEY**
21
                                     *Filed Concurrently with Proposed
22                                   Order*

23                                   Magistrate Judge Michael R. Wilner

24                                   Hearing Date:  October 24, 2018

25                                   Courtroom:      Telephonic

26                                   Discovery Cutoff: October 31, 2018

27                                   Pre-Trial Conference:  June 10, 2019

28                                   Trial Date:  June 25, 2019

TO THE COURT, PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 24, 2018 before Magistrate Judge Michael R. Wilner via teleconference (and at a time to be specified by the Court), Defendant FTI Consulting, Inc. ("FTI") will and hereby moves the Court, pursuant to Rule 37 of the Federal Rules of Civil Procedure, for the entry of an order compelling Plaintiffs and non-party Houlihan Lokey ("Houlihan") to produce all withheld and/or "clawed back" documents not concerning legal advice and responsive to Defendants' subpoena and production requests.  In addition, FTI moves the Court for the entry of an order: (i) declaring that Plaintiffs' and Houlihan's blanket assertion of privilege is improper; (ii) requiring Plaintiffs and Houlihan to produce all documents not concerning legal advice, including those that were "clawed back"; (iii) requiring Houlihan to produce a proper privilege log in accordance with Fed. R. Civ. P. 45(e)(2)(A)(ii); (iv) if necessary, permitting an *in camera* review of any documents Plaintiffs continue to withhold; (v) permitting Defendants to reserve their rights to re-open depositions related to any documents produced in response to this Motion; and (vi) requiring Plaintiffs and Houlihan to pay the costs and fees associated with any continued deposition related to this Motion and for the costs and fees related to the presentment of this Motion.

This Motion is based on this Notice of Motion and Memorandum of Points of Authorities, the attached documents filed contemporaneously with this Motion, and upon such oral argument and submissions that may be presented at or before the hearing on this Motion.  This Motion is made following the parties' October 10, 2018 telephonic conference before Magistrate Judge Michael R. Wilner and numerous conferences between counsel pursuant to Local Rule 37-1.

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................1

II.   FACTUAL SUMMARY ....................................................2

    A.    Background Information ........................................2

    B.    Defendants' Attempts to Resolve This Dispute................2

III.  ARGUMENT...................................................................4

    A.    The Houlihan Documents Are Financial, Not Legal, Documents and Therefore Are Not Privileged ................4

IV.   CONCLUSION & REQUESTED RELIEF ................6

i

DEFENDANT FTI CONSULTING, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM PLAINTIFFS & NON-PARTY HOULIHAN LOKEY

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All Star Seed v. Nationwide Agribusiness Ins. Co.*,
    2013 WL 1882260 (S.D. Cal. May 3, 2013) .............................................1, 4, 5, 7

*Berrey v. Plaintiff Inv. Funding LLC*,
    2014 WL 6908525 (D. Ariz. Dec. 9, 2014) ...........................................................6

*Chandola v. Seattle Hous. Auth.*,
    2014 WL 4685351 (W.D. Wash. Sept. 19, 2014) ..................................................6

*Koninklike Philips Elecs. N.V. v. KXD Tech., Inc.*,
    2007 WL 3101248 (D. Nev. Oct. 26, 2007) ..........................................................7

*Mas v. Cumulus Media Inc.*,
    2010 WL 4916402 (N.D. Cal. Nov. 22, 2010) ......................................................7

*Todd v. STAAR Surgical Co.*,
    2015 WL 13388227 (C.D. Cal. Aug. 21, 2015) ....................................................5

*United States v. Gurtner*,
    474 F.2d 297 (9th Cir. 1973) ..........................................................................4, 5

*Williams v. Big Picture Loans, LLC*,
    303 F. Supp. 3d 434 (E.D. Va. 2018) ..................................................................5

**Other Authorities**

Fed. R. Civ. P. 45 ...............................................................................................2, 7

Fed. R. Civ. P. 45(e)(2)(A)(ii)................................................................................6

ii

## I.   INTRODUCTION

This Motion seeks the production of highly relevant documents and communications between Plaintiffs and their financial advisor (Houlihan), all of which are being improperly withheld as allegedly privileged.   Plaintiffs' and Houlihan's sole basis for withholding such documents is that Plaintiffs' counsel (Latham & Watkins) signed Houlihan's engagement letter.   On this basis alone, Plaintiffs "clawed back" approximately 280 documents less than 48 hours before the deposition of Houlihan's representative (Mr. Coutts), entirely withheld hundreds of additional Houlihan documents while refusing to even provide a privilege log, and instructed Mr. Coutts not to answer *any* questions related to communications with Plaintiffs—even if counsel was not present and even if the communications concerned financial advice, not legal advice.   This is improper.   To shield *all* communications between a corporation and its financial advisors solely because those advisors were formulaically retained by counsel would lead to an unprecedented expansion and abuse of the attorney-client privilege.

Plaintiffs' attempt to shield such documents from discovery is strategically motivated.   The few documents seen to date[1] entirely undercut Plaintiffs' claims. Specifically, the documents show that Plaintiffs (bondholders of Rural/Metro) invested in Rural/Metro *because* they believed it would eventually file for bankruptcy (which it did), hoped to receive Rural/Metro equity following bankruptcy (which they did), and that their primary investment thesis was Rural/Metro would become profitable post-bankruptcy following the Affordable Care Act's implementation. Thus, Plaintiffs did not invest in Rural/Metro in reliance on any alleged misrepresentations made by Defendants.   Put simply, the Houlihan documents appear to be a treasure trove of evidence subverting Plaintiffs' case theory, all of which are being improperly withheld as "privileged."

---

[1]    For instance, Plaintiffs and Houlihan's counsel did not "claw back" certain documents because they "predated" Houlihan's signing of its engagement letter with Latham & Watkins.

In addition, Plaintiffs and Houlihan improperly instructed Mr. Geoffrey Coutts, Houlihan's representative, not to answer questions during his deposition related to communication with Plaintiffs—even if counsel had not been involved.  *After* Mr. Coutts' deposition, Houlihan finally produced a one-page privilege "log" making a blanket assertion of privilege without providing any specifics of what was being withheld, on what grounds, or even disclosing the volume of documents withheld, in plain violation of Rule 45.  Accordingly, Defendants respectfully bring this Motion.

## II.   FACTUAL SUMMARY

### A.   Background Information

Plaintiffs' bankruptcy counsel, Latham & Watkins ("Latham"), engaged Houlihan around July 2013 to provide certain financial restructuring services. Houlihan is not a law firm and does not provide legal services.  Nevertheless, Plaintiffs have asserted a blanket privilege over communications between them and Houlihan, regardless of the substance of these communications, whether a lawyer was included on those communications, or whether the communication involved legal advice.  *See, e.g., attached* Ex. D.  The primary basis for Plaintiffs' and Houlihan's position appears to be that Houlihan's engagement letter was executed between Houlihan and Latham at the direction of Plaintiffs (and other similarly situated bondholders of Rural/Metro).  *Id.*

### B.   Defendants' Attempts to Resolve This Dispute

During the spring and summer of 2018, Plaintiffs and Houlihan produced certain documents and purportedly withheld others on privilege or work-product grounds.   Approximately six months ago—in April 2018—Defendants asked Plaintiffs to provide the basis for withholding communications between Plaintiffs and Houlihan.   Despite repeated requests, including in June 2018, Plaintiffs never provided any basis for their privilege assertions and withholding of such communications.

Instead, on September 12, 2018, less than 48 hours before the deposition of

2

Houlihan's representative (Mr. Coutts), Plaintiffs "clawed-back" approximately 280 documents already produced by Houlihan or Plaintiffs, claiming there "was an inadvertent production of privileged documents involving Houlihan . . . that (i) contain work product, (ii) reflect discussions regarding work product, or (iii) were prepared in anticipation of litigation." *See attached* Ex. A.

Additionally, during the deposition of Mr. Coutts—and based on subsequent discussions with Plaintiffs' counsel—Defendants discovered that Houlihan had withheld numerous (likely hundreds, if not thousands) of documents responsive to Defendants' subpoena and never produced a corresponding privilege log. During Mr. Coutts' deposition, Plaintiffs' and Houlihan's counsel from McKool Smith instructed Mr. Coutts not to respond to any questions related to communications between Houlihan and Plaintiffs *even if legal counsel was not present or involved*.[2] *See attached* Ex. D. Mr. Coutts followed McKool Smith's instructions. Ten days after Mr. Coutts' deposition and after Defendants' repeated requests to do so—including during the September 21, 2018 meet and confer—Houlihan provided a one-page, categorical privilege "log." *See attached* Exs. B, C. The privilege "log" gives no indication of even the number of documents Houlihan withheld in response to Defendants' subpoena, much less the requisite specifics (such as senders, recipients, and dates) explaining why the documents were withheld.

---

[2]      For instance, during Mr. Coutts' deposition, Defendants' counsel asked Plaintiffs/Houlihan's counsel: "Is it your position that [Mr. Coutts'] communications with the bondholders [such as Plaintiffs] when counsel is not present are privileged?" Plaintiffs/Houlihan's counsel responded "Yes." Defendants' counsel then asked: "And what is the basis for that assertion?" to which Plaintiffs/Houlihan's counsel responded: "Again, as I've explained previously today, the basis for that assertion is that Houlihan was engaged by Latham and was working at the direction of Latham on this engagement." *See* Ex. D at 133:13-22.

3

## III.   ARGUMENT

### A.   The Houlihan Documents Are Financial, Not Legal, Documents and Therefore Are Not Privileged

Plaintiffs and Houlihan should be compelled to produce the Houlihan documents because the documents are not privileged.  The burden of establishing privilege rests on Plaintiffs and Houlihan.  *See, e.g.*, *United States v. Gurtner*, 474 F.2d 297, 298 (9th Cir. 1973) ("The burden of establishing the existence of an attorney-client relationship rests on the claimant of the privilege who resists disclosure of shielded communications.").  They have not met their burden.

*First*, Plaintiffs and Houlihan have not properly, or thoroughly, explained why they believe the documents at issue are privileged.  Plaintiffs and Houlihan claim that "[c]ommunications between Houlihan and Latham and/or our clients [Plaintiffs] are attorney-client privileged and protected attorney work product."  *See attached* Ex. B. They argue that the mere fact of Houlihan's engagement by Latham permits a blanket privilege on all communications between Plaintiffs and Houlihan, and provide no other explanation or support for this assertion.  While attorney-client privilege may exist between a party and an agent of an attorney, "not *all* consultations with such agents are privileged."  *Gurtner*, 424 F.2d at 299 (emphasis added).  For instance, Houlihan's financial advice to Plaintiffs is not privileged merely because Latham engaged Houlihan.  If that were true, any and all advisory services could be rendered privileged, regardless of their content and purpose, by merely substituting a lawyer as the signatory on the engagement.  The blanket assertion of privilege is thus improper.

*Second*, certain Houlihan documents do not appear to fall under the definition of attorney-client privilege because there was no attorney involved, or legal advice rendered.  In order to claim privilege, it is well settled that the communication must be made both (1) in confidence, and (2) for the *purpose* of obtaining *legal* advice from a lawyer.  "If what is sought is not legal advice but only accounting service . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists."

4

*Id.* "The vital element to assertion of the privilege in the case of an attorney's agent—beyond the basic elements of the privilege—is that the 'communication be made in confidence for the purpose of obtaining *legal* advice *from the lawyer.*'" *Todd v. STAAR Surgical Co.*, 2015 WL 13388227, at *5 (C.D. Cal. Aug. 21, 2015) (emphasis in original) (quoting *Gurtner*, 474 F.2d at 299); *see also Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 446 (E.D. Va. 2018) (finding that "[t]he communications to the agent must be made for the purpose of the [agent] assisting [the client] in the rendition of legal services rather than merely for the purpose of receiving accounting [or tax] advice.") (alteration in original) (internal quotation marks and citation omitted).  Plaintiffs ignore this critical distinction in their deficient privilege log, which advances a blanket privilege on all communications with Houlihan on *all* subject matters.

In addition, many of the "clawed-back" documents concern Houlihan commenting on Rural/Metro's EBITDA (a major issue in this case) for the purposes of Plaintiffs' investor memoranda and do not include any lawyer on the communications or involve any legal advice.  In fact, one of the documents that Plaintiffs did *not* claw back because it "predated the [legal] engagement"[3] provided a host of financial advice from Houlihan having nothing to do with legal advice.  There are almost certainly additional documents *post*-dating Houlihan's engagement reflecting the same or similar non-legal, financial advice that Plaintiffs and Houlihan are improperly withholding.  Such documents are likely directly relevant to the issues at the crux of this lawsuit, including how Plaintiffs valued their investment in Rural/Metro at various points in time, and thus whether they can establish loss

---

[3]     *See* Ex. D at 62:25-63:9 (As expressed during Mr. Coutts' deposition, Plaintiffs' counsel's "understanding is this is a preliminary pitch materials that predate the engagement, so we're not going to claw it back. . . . However, that won't be a waiver of any – any questions that go into what actually happened and, advice within the engagement [between Plaintiffs and Houlihan] that wasn't shared with the third party, we are claiming privilege and work product over.  And any discussion of these materials would not be a waiver of that assertion.").

causation, reliance, and/or resulting damages.  These documents may very well be fatal to Plaintiffs' claims, and Plaintiffs' unwillingness to produce them only reinforces this likelihood.

*Third*, Houlihan's one-page privilege log, submitted in late September, is inadequate and improper.  It plainly fails to comply with Fed. R. Civ. P. 45(e)(2)(A)(ii), which imposes an obligation to provide a *detailed* privilege log.  *See, e.g., Berrey v. Plaintiff Inv. Funding LLC*, 2014 WL 6908525, at *4 (D. Ariz. Dec. 9, 2014) (finding "that the Elardo firm and Electric are not excused from their duty to provide a privilege log simply because they are non-parties").

Indeed, Houlihan's privilege log simply states: "[d]ocuments reflecting communication between Houlihan . . . and noteholders within the ad hoc group of Rural/Metro noteholders represented by Latham" are "[w]ithheld on the basis of Attorney-Client Privilege and Work-Product," without any additional detail.  *See attached* Ex. C.  Houlihan has failed to provide even the most basic information on its log, including the number of allegedly privileged documents being withheld from production.  *See Chandola v. Seattle Hous. Auth.*, 2014 WL 4685351, at *8 (W.D. Wash. Sept. 19, 2014) ("Defendants rightly point out that [a third-party] has failed to produce a privilege log or otherwise describe in detail the nature of the withheld communications, as required by Rule 45(e)(2)(A)(ii)").

Because Houlihan's privilege log provides no individualized, document-specific explanations for its privilege claims, it is impossible for Defendants to decipher what, if any, withheld documents may involve actual legal advice, as opposed to financial advice, which is not entitled to protection.  Plaintiffs have come nowhere close to meeting their burden as to privilege.

## IV.   CONCLUSION & REQUESTED RELIEF

For the foregoing reasons, Defendants request the following relief:

*First*, Defendants request a determination that Plaintiffs' blanket assertion of privilege is improper and that only communications precisely involving legal advice

6

1    (not financial advice) may be withheld by Plaintiffs and Houlihan.

2         *Second*, Defendants request that Plaintiffs and Houlihan produce all documents

3    not concerning legal advice, including various documents that were "clawed back."

4         *Third*, Defendants request a detailed privilege log identifying each document

5    withheld by Houlihan and specifying its date, sender, recipients, type of privilege

6    claimed, and the specific description of the basis for withholding the document as

7    required by Rule 45.  Critically, as noted above, Houlihan's current privilege log does

8    not even indicate the *number* of documents withheld, much less the basis for

9    withholding each document.  *See attached* Ex. C.

10         *Fourth*, to the extent Plaintiffs and Houlihan *still* withhold documents

11    Defendants deem not to be privileged, Defendants request an *in camera* review of

12    such documents by Your Honor.

13         *Fifth*, Defendants request that they be permitted to reserve their rights to re-

14    open depositions related to any documents produced in response to this Motion.

15         *Sixth,* Defendants request that Plaintiffs and/or Houlihan pay the costs and fees

16    associated with any continued deposition related to document productions related ot

17    this Motion, the fees associated with preparing and presenting this Motion, and any

18    further fees related to this Motion.  *See All Star Seed v. Nationwide Agribusiness Ins.*

19    *Co.*, 2013 WL 1882260, at *13 (S.D. Cal. May 3, 2013) ("[B]ecause [a party's] late

20    disclosure of documents caused the redeposition of [two deponents], the Court will

21    require [the party] to pay the costs of those two redepositions."); *Mas v. Cumulus*

22    *Media Inc.*, 2010 WL 4916402, at *4 (N.D. Cal. Nov. 22, 2010) ("Because the Court

23    is ordering new documents to be produced, it is fair . . . for Defendant to take the

24    depositions of [certain individuals] . . . In addition, Plaintiff shall bear the costs related

25    to the continued depositions that Defendant would not have otherwise incurred if

26    documents had properly been produced prior to the initial depositions."); *Koninklike*

27    *Philips Elecs. N.V. v. KXD Tech., Inc.*, 2007 WL 3101248, at *3 (D. Nev. Oct. 26,

28    2007) (ordering party entitled to attorneys' fees and costs where discovery requests

7

DEFENDANT FTI CONSULTING, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM PLAINTIFFS & NON-PARTY HOULIHAN LOKEY

sought relevant information and court held defendants waived their privilege objections by failing to provide any privilege logs or affidavits to support their privilege claims).[4]

WHEREFORE, Defendant FTI Consulting, Inc. respectfully requests that the Court grant this Motion to Compel in its entirety and order any other relief the Court deems just and proper.

Dated: October 10, 2018

WINSTON & STRAWN LLP

By:  /s/ *Daniel D. Rubinstein*

Daniel D. Rubinstein (SBN: 178896)
drubinstein@winston.com
William C. O'Neil (Admitted *Pro Hac Vice*)
woneil@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue
Los Angeles, CA 90071-1543
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750

*Attorneys for Defendant*
*FTI Consulting, Inc.*

---

[4]     *See also* Fed R. Civ. P. 37(a)(5) ("If the [discovery] motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.").

8

1

## <u>CERTIFICATE OF SERVICE</u>

2

The undersigned hereby certifies that on October 10, 2018, the foregoing

3

document was served on all counsel of record by operation of the Court's ECF

4

notification system.

5

6

*/s/ Daniel D. Rubinstein*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9